Derbigny, J.
delivered the opinion of the court. The plaintiffs and appellants are the legitimate children of the late Don Diego Murphy, consul of Spain at New-Orleans, and of Mary Creagh, his first wife, between whom there existed a community of goods. They pretend that, no steps having been taken since the death of their mother to cause that community to cease, it has continued between them, their father and the defendant, his second wife; and that the estate left at the death of their father ought to be divided accordingly.
The material facts in the case are these. In the year 1789, Don Diego Murphy, being then at Cape Francois, in the island of Hispaniola, married the mother of the appellants, Mary Creagh. The contract of marriage stipulates a community of acquests and gains between the parties, to be regulated by the custom of Paris, even though they should afterwards reside in countries where different laws should prevail, Some years after, they came to live at Charles- *84 ton, in South-Carolina, where Mary Creagh died, leaving three infant children, the present appellants. Don Diego Murphy afterwards married Louise Peyre, the present defendant. In their contract of marriage a community of goods is also stipulated, and a cause is introduced, whereby Don Diego Murphy binds him-sell to fulfil the necessary formalities to put an end to the community. which he acknowledges has continued to subsist between him and his children of the first marriage. It appears by oral testimony that, shortly after this second contract had been celebrated, he caused an inventory of his estate to be made, the legality of which is disputed.
The first and most important question which presents itself here is, whether the community which existed between Don Diego Murphy and his first wife did really continue after her death between him and his children.
The better to understand the principle on which turns the decision of this point, we shall first consider what would have been the situation Don Diego Murphy and his first wife, if they had married without any contract. It has already been made a question in this court int he case of Gale vs. Davis's heirs, 4 Martin, 645, whether the law of the place where a mar mar *85 riage is celebrated is to follow the married couple wherever they go, and to regulate their respective interest every where ; and it was decided upon the authorities there cited, that " when a married couple emigrate from the country where their marriage took place, into another, the laws of which are different, the property which they acquire in the place where they have moved, is governed by the laws of that place.” Hence, if Don Diego Murphy and his first wife had married, without contract, at Cape Francois, and afterwards transferred their domicil to Charleston, we would have no hesitation to say, that the community would have ceased from the moment of their arrival at Charleston; and that the property thereafter acquired would have belonged to the husband alone.
But the parties had entered into a contract by which it was stipulated, that there should be between them, a community of goods, to be regulated by the custom of Paris, wherever they should go. That contract was their law ; and provided it was not to cause any prejudice to the citizens of the country where they went to reside, and is execution was not incompatible with the laws of that country, it was to be maintained. By virtue of that contract therefore, the community of goods stipulated by the parties, subsist *86 ed at Charleston, until the death of the wife. Did it survive her, and continue to have effect, between the husband and his children?
To put this question in a clear point of view, we must distinguish between the rights which derive from the contract of marriage, in favor of the heirs of the wife, and the rights which are granted by law to the heirs of either party.The rights which derive from the contract, are those of accepting or refusing the community, as it stood at the dissolution of the marriage, and in case of renunciation to retake all the property of the wife free from debts. The right granted by law to the heirs of either the wife or the husband, is that of continuing to be in partnership with the survivor, if they please, in case he or she should neglect to make an inventory of the property left at the death of his or her partner. This right, so far from being the consequence of a contract, is given by the custom of Paris to the children, whether there be a contract or not. Let us apply this distinction to the present case. Murphy and his first wife, by virtue of their contract of marriage, continued to be in community of goods, even after their removal to a country where a different law prevailed ; that stipulated partnership between them lasted as long as their marriage: upon the dissolu- *87 don of the marriage. there was an end to ¡he community by contract. What could make that community continue between her children and their father? The law. But that law does not prevail in the country which the parties then inhabited. The forcible consequence is that the community did not survive the mother of the appellants.
The belief which Don Diego .Murphy and his second wife, the defend i>t. seem to hate entertained that the community was continuing between him and his children at the time of their marriage, does not alter the situation of the case. If under that belief they have done some act. if, for example, they had allowed to the. plaintiff's more than they were endued In. perhaps they could not even recover it. back,, according to the maxim that no relief is "ranted against an error of law. But here tlrngs nre entire. The mere expression of their belief cannot be deemed of any account.
The situation in which the community stood, at the time of Mary Creagh's death, is left in the dark, the plaintiffs having made no effort to adduce any evidence on the subject. From the testimony produced by the defendant, it appears that, at the epoch of her marriage. Don Diego Murphy possessed no real estate, and hardly *88 personal estate enough to pay to bis children the s’awry of their mother. We must take the evidence as it is, and conclude that, the community between him and Mary Creagh, had made no gains.
The claim of the appellants, must therefore he reduced to the dowry, or marriage portion of their mother, and their share in their fathers succession, which is to be composed of his half of the property, inventoried and collected, according to tin* account rendered by bis-testamentary executors; deduction being first made of the marriage portion of Mary Creagh. and of the marriage portion, donaire et preciput of the defendant.
A difficulty has occurred, as to the manner of calculating the marriage portion of Mary Creagh. It is called ten thousand Iivres, and the appellants contend, that tne.se are Iivres tournois of the currency of Fram e, the mother kingdom of the then colony of St. Domingo, where the contract was celebrated. We, are however satisfied from what has been shewn to the court, that the Iivres must be understood according to the St. Domingo currency.
Upon the whole, we have found nothing to redress in the judgment appealed from.
Rodriguez for the plaintiffs, Moreau. for the defendant.
It is therefore ordered, adjudged and decreed. that the judgment of the district court be affirmed with costs.